802 F.2d 461
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David M. WEST and Alice Bolling, individually and on behalf
of all others similarly situated, and Warren
County Independent Political Council,
Plaintiffs-Appellants,
v.
WARREN COUNTY FISCAL COURT OF WARREN COUNTY, KENTUCKY; et
al., Defendants- Appellees.
 No. 84-5734.
 United States Court of Appeals, Sixth Circuit.
 Aug. 19, 1986.
 
 Before WELLFORD and MILBURN, Circuit Judges; and DeMASCIO, District Judge.*
 PER CURIAM:
 
 
 1
 Pro se plaintiff-appellant, David M. West, appeals the dismissal of his cause of action in the United States District Court for the Western District of Kentucky for failure to state a claim upon which relief can be granted. Giving plaintiff the benefit of some doubt concerning the meaning of the complaint, we conclude West has alleged that the at-large voting scheme for the election of the Board of Commissioners in Bowling Green, Kentucky, violated the rights of Bowling Green's black citizens as guaranteed principally by the fourteenth and fifteenth amendments to the United States Constitution, as well as section 2 of the voting Rights Act of 1965.[1] See 42 U.S.C. § 1973 (Supp. 1984). District Judge Siler referred the-case to magistrate King, who recommended dismissal of plaintiff's case. The district court agreed with the recommendation. we reluctantly conclude that we should vacate the order and remand for further proceedings.
 
 I.
 
 2
 From the sparse, haphazard record, the court has attempted to glean the tollowing facts. The voters of Bowling Green adopted the present city manager form of government by an election held on November 8, 1966, pursuant to the applicable provisions of the Kentucky Revised Statutes at that time. The present enabling statute in force and effect is K.R.S. 83A.150 (Supp. 1984) The change in the form of government pursuant to Kentucky statute is by popular vote. This new government consists of a five-member legislative Board comprised of the elected mayor and four elected commissioners who enact ordinances and effect municipal orders, and direct the activities of the city manager and his subordinates. The manager executes the policy and directions of the Board of Commissioners. The four commissioners and mayor are elected from the city at large pursuant to the applicable state law.
 
 
 3
 The magistrate recommended dismissal of plaintiff's complaint. He stated:
 
 
 4
 It is apparent from reading the plaintiff's complaint and considering his argument at the hearing held by the Magistrate that the plaintiff's chief concern is that neither he nor any other black citizen of Bowling Green has ever been elected to a city-wide office in the history of the city. None has been elected either prior or subsequent to the 1967 implementation of the city manager form of government. He sees the lot of the Negro race in Bowling Green being greatly' improved if a black were elected as mayor or city commissioner.
 
 
 5
 The plaintiff would have this C6urt dismantle the city manager form of government which was mandated by the vote of a majority of the voting citizens in Bowling Green and supervise the establishment of a city government which would consist of district representatives which were elected by the majority vote of voters in a particular district of Bowling Green. Since the plaintiff alleges that a great majority of black citizens of Bowling Green live within the boundaries of the area he purports to represent in this action and described in Finding 3, supra, he feels that adoption of the proposed new form of city government allowing the election of district representatives shall most likely assure the election of a black to the Bowling Green city government. This may or may not be so. We are not required to analyze the accuracy of the plaintiff's theory.
 
 
 6
 ....
 
 
 7
 The Court [discussing the Supreme Court's decision in Mobile v. Bolden, 446 U.S. 55 (19801 goes on to hold that a voter such as the plaintiff or a group of voters such as the plaintiff purports to represent is only entitled to protection from a system of government which was enacted for discriminatory purposes.
 
 
 8
 ....
 
 
 9
 The plaintiff has failed in his complaint and in his argument before the jury to allege or show any facts which would suggest that the present city manager form of government was conceived and operated as a device to discriminate against Mr. West and other blacks in Bowling Green.
 
 
 10
 The district court adopted the magistrate's report and recommendation in full.
 
 II.
 
 11
 The district court relied upon Mobile v. Bolden, 446 U.S. 55 (1980), as its foundation stone. unfortunately, Bolden is no longer a solid foundation, In Buchanan v. Jackson, 708 F.2d 1066 (6th cir. 1983), this court examined the standards that should glovern challenges to at-large voting procedures. The court examined the impact of Lodge, 458 U.S. 613 (1982), on Bolden. Bolden held that a plaintiff must provide direct evidence of discriminatory intent in order to challenge successfully at-large voting systems.[2] Lodge, however, adopted a "totality of the circumstances" approach to proof of discriminatory intent. It gave substantial deference to the district court's findings of discriminatory intent.[3] Id. at 1070. In Buchanan the district court dismissed plaintiffs' claim that "the at-large system violates ... the constitution and various federal statutes by diluting the voting strength of Jackson's black citizens and depriving them of meaningful participation in the political processes of that city." Id. at 1067. In Buchanan we remanded to the lower court for consideration of plaintiffs, circumstantial proof of discriminatory purpose under Lodge.
 
 
 12
 We now remand plaintiff's constitutional claims respecting at large election of the four commissioners to the district court for consideration under the standards enunciated in Buchanan. See also Thornburg v. Gingler, 54 U.S.L.W. 4877 (June 30, 1986).
 
 B.
 
 13
 We cannot determine whether plaintiff raised a Voting Rights Act claim in the district court. He did allude to his rights under the Act on appeal. The magistrate, however, did not specifically refer to the Voting Rights Act. He does state that plaintiff has no claim because he had failed to allege or prove that defendants had any discriminatory purpose in enacting the Bowling Green at large voting scheme. The amended section two of the Act, however, does not require discriminatory intent. We thus remand the case to the district court for a determination of any claim plaintiff has under the Voting Rights Act respecting the election of the four commissioners. See Thornburg v. Ginger, 54 U.S.L.W. 4877 (June 30, 1986).
 
 C.
 
 14
 Finally, we affirm the district court's dismissal of plaintiff's claims respecting the election of the mayor. The Supreme Court in Thornburg stated:
 
 
 15
 [Tlhe minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a singlemember district. if it is not, as would be the case in a substantially integrated district, the multimember form of the district cannot be inority voters' inability to elect its candidates.[17]
 
 
 16
 54 U.S.L.W. at 4882-83 (one footnote omitted).
 
 
 17
 This recent Supreme Court language appears to require plaintiff in a claim of this kind to demonstrate that blacks voting as a bloc potentially could elect a mayor. The record reveals that blacks represent less than twelve percent of the Bowling Green population. J.A. at 66. It is therefore evident that blacks voting as a bloc could not elect the mayor.[4] (it is also doubtful that a twelve percent minority could elect one of four commissioners even if elected from districts.)
 
 
 18
 Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.
 
 
 19
 ossess the potential to elect representatives in the absence o f the challeng ed structure or practice, they cannot claim to have been inju red by that struc ture or practice. The single-member district is generally the appropriate stan dard against which to measure minority group potential to elect because it is t he smallest political unit from which representati ves are elected. Thus, if t he minority group is spread evenly throughout a multimember district, or if, al though geographically coinpact, the minorit y group is so small in relation to the surrounding white population that it could not constitute a majority in a § ingle-member district, these minorit y voters cannot maintain that they would h ave been able to elect representa tives of their choice in the absence of the m ultimember electoral structure.
 
 
 
 *
 Honorable ROBERT E. DeMASCIO, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The joint appendix on appeal does not contain a copy of the complaint
 
 
 [2]
 A plurality on the Court had discredited as constitutionally insufficient the Zimmer factors, which describe modes of circumstantial proof, See White v. Re er, 412 U.S. 755 (1973); Zimmer v. McKeithen, 485 F.2 ,d sub nom. East Carrol Parish School Board v. Marshall, 424 u.S. 636 (1976) per curiam)
 
 
 [3]
 The Supreme Court permitted such findings to rely in part on the existence of Zimmer factors. This approach was permissible because the district court did not limit its inquiry to those factors. See Buchanan, 708 F.2d at 1070
 
 
 [4]
 The mayor in Bowling Green would of necessity be elected city-wide